[Civ. No. 24061. Second Dist., Div. One. May 24, 1960.]

HAROLD E. McGHAN, Appellant, v. ROY ROGERS-FRONTIERS, INC. (a Corporation), Respondent.

*Assigned by Chairman of Judicial Council.

Jack R. Berger for Appellant.

Lillick, Geary, McHose, Roethke & Myers and Don I. Johnson for Respondent.

WOOD, P. J.—An action for (1) damages for breach of alleged oral contract of employment; (2) wages allegedly due under the contract; and (3) wages allegedly recoverable as a penalty under section 203 of the Labor Code (failure to pay wages immediately after discharge of employee). In a nonjury trial, judgment was for defendant Roy Rogers-Frontiers, Inc. (On motion of plaintiff the action was dismissed as to all other defendants.) Plaintiff appeals from the judgment.

In the first cause of action of the complaint, it was alleged that about October 6, 1955, plaintiff and defendant entered into an oral agreement whereby defendant agreed to employ plaintiff as film editor for one year and to pay him, for his services, $340.43 a week plus $708.09 vacation pay; plaintiff performed services under the contract until defendant refused to permit him to continue performing services; on October 26, 1955, defendant refused to permit plaintiff to perform services under the contract or to pay plaintiff for his services; plaintiff was damaged thereby in the amount of $7,229.44.

The second cause of action incorporated by reference the allegations of the first cause of action pertaining to the employment contract; and it was alleged further that plaintiff performed all the conditions of the contract until October 26,

1955, when the defendant refused to permit him to continue performing services under the contract; the wages, then earned by plaintiff in the amount of $204.06, became immediately due and payable and, although plaintiff demanded same payment thereof, defendant refused to pay said wages; under section 203 of the Labor Code plaintiff is entitled to wages for a period of 30 days from and after the date the wages became due.

Defendant, in its answer, denied the aforesaid allegations of the complaint.

Appellant contends that the evidence is insufficient to support "all of the conclusions of law." Under the heading of conclusions of law, the court stated in part that plaintiff was paid in full; there was no wilful failure or any failure to pay wages as required by section 203 of the Labor Code; and defendant did not violate section 203 or any section of the said code. Appellant asserts that the sole issue on appeal is whether defendant violated section 201 and 203 of the Labor Code by wilful failure to pay wages to plaintiff.

About January 6, 1955, defendant Roy Rogers-Frontiers, Inc., employed plaintiff as a sound effects editor at a salary of $252.91 a week. About July 18, 1955, defendant employed plaintiff as a film editor at a salary of $340.43 a week. Plaintiff asserts that on October 6, 1955, he had a conversation with defendant's producer to the effect that defendant would employ plaintiff as a film editor in the production of a series of motion pictures for television, and that the work would continue for at least a year. There was testimony on behalf of defendant to the effect that plaintiff was not employed for the time that would be required to produce the series, or employed for any definite time.

Plaintiff testified that on October 24, 1955, defendant's producer told him that he (plaintiff) might return to his former work as sound effects editor, or if he did not do that he would be discharged immediately; the plaintiff replied that he would like to take it up with his union representative; the producer replied that plaintiff could "go ahead and take it up." The defendant's producer testified that on October 19th or 20th he told plaintiff that he (producer) was dissatisfied with plaintiff as a film editor and that as of Saturday night (October 22) his services as film editor would be terminated, and if he (plaintiff) wished to continue working for defendant as a sound effects editor he could see the supervisor in charge of that department, who would put him to work

there; then the plaintiff said, "If I don't elect to do this, then what?"; the producer replied, "That is it."

Plaintiff did not return to his former work as sound effects editor.

Plaintiff testified that he worked as a *film* editor on Sunday, October 23, and on October 24 and 25, and until 11 a.m. on October 26; at 11 a.m. on October 26 the supervisor of sound effects editing asked plaintiff if he intended to return to sound effects editing; plaintiff replied that he did not intend to do that; then the supervisor told him to return to sound effects editing or to get off the lot; then plaintiff went to lunch, and after he returned to the editing room he noticed that the film cutting machine which he had been using had been removed from the room; he was unable to continue his work and he left the lot and went home. There was evidence, on behalf of defendant, that plaintiff did not work as a film editor or at all after October 22, but that plaintiff was on defendant's premises on October 24 and 26. The producer testified that he had a conversation with plaintiff in the music room on defendant's premises on October 26, and at that time he told plaintiff that plaintiff did not have to come in and just pass time doing nothing with no assignment there, and that if he did not want to work as a sound effects editor and would turn in the time card the producer would pay him for the week without plaintiff coming in and marking time.

A representative of a union, called as a witness by plaintiff, testified that, in a conversation with the producer in November, the producer made a statement to the effect that he had dismissed plaintiff and he felt that he should have paid plaintiff for the concluding week, but he was not about to do so for the reason plaintiff had brought the union into the matter. The producer testified that he did not have such a conversation with the union representative. The pretrial stipulation included a statement that "defendant further contends that he [it] did offer to pay plaintiff as severance pay for the week ending October 29, 1955, but that plaintiff refused such payment."

Some of the findings, in addition to those under the heading of conclusions of law, were: Plaintiff was hired for an indefinite period of time and was paid on a weekly basis. Defendant terminated plaintiff's employment on October 22, 1955. When Mr. Lacey (producer) terminated plaintiff's employment, he stated that he was willing to employ plaintiff as a sound effects editor. Plaintiff refused to work as a sound

effects editor. Plaintiff did not work for defendant on October 23, 24, 25 and 26. Plaintiff turned in a time card each week during his employment, ending with the week of October 22. Mr. Lacey requested him to turn in a time card for the period of time plaintiff testified he worked in the week commencing October 23; and plaintiff refused to turn in a time card for such period. Defendant offered to pay plaintiff for the week commencing October 23, if plaintiff would turn in a time card. Plaintiff refused to accept such payment and stated that he did not need defendant's money.

It was stipulated that plaintiff was paid for the week ending October 22. The check for that week was dated October 26. Plaintiff testified that he received the check on November 2. This action was commenced about a year later, on November 30, 1956.

With reference to the first cause of action (for damages for breach of contract to employ plaintiff for a year) the court found, as above shown, that defendant did not employ plaintiff for a year or any definite period of time. Appellant makes no contention on appeal with respect to the determination on the first cause of action.

As above shown, the second cause of action is for (1) wages for the time from October 22 to October 26 (being the time which plaintiff claimed he worked after the alleged discharge on October 22); and (2) for the statutory penalty under section 203[1] of the Labor Code (i.e., 30 days' additional wages) for failing to pay "immediately," on October 26, the wages for those three days. With reference to that cause of action, the court found, as above stated, that plaintiff's employment was terminated on October 22, and that plaintiff did not work after that date and was not entitled to any wages. The court concluded that defendant had not violated section 203 or any section of the Labor Code, and that plaintiff was not entitled to recover any statutory penalty from defendant. It thus appears that the court found against plaintiff on the issues as pleaded in the second cause of action. On this appeal the

[1]Section 203 of the Labor Code provides, in part: "If an employer wilfully fails to pay, without abatement or reduction, in accordance with sections 201 and 202, any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than thirty days. . . ."

Section 201 of said code provides, in part: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

appellant (plaintiff) does not assert that the court erred in its determination of those issues.

In the pretrial statement, as shown above, it was said that defendant further contends that it offered to pay plaintiff severance pay for the week ending October 29, but plaintiff refused such payment. By reason of that statement, appellant asserts that a further issue at the trial was whether he was entitled to severance pay at the time he was discharged on October 22. Evidence was presented at the trial as to whether it was the custom in the television film industry to give severance pay; and also there was testimony that defendant's producer offered to give severance pay to appellant if appellant would turn in a time card, but appellant refused to turn in the card. As above stated, the court found that defendant offered to pay appellant for the week commencing October 23 if appellant would turn in a time card, but appellant refused to accept such payment; and the court also found that appellant had been paid in full. It thus appears that the court found against appellant on the issue, assertedly presented by the pretrial statement, as to whether appellant was entitled to severance pay.

Appellant presents three contentions on appeal. One of those contentions relates to an issue presented at the trial (under the pretrial statement), that is, the issue as to whether appellant was entitled to severance pay. The two other contentions on appeal relate to matters which were not within the pleaded issues, or within issues recited in the pretrial statement, or within issues orally asserted at the trial. Those two other contentions related (1) to a statutory penalty for failure to pay wages "immediately" on October 22 for work performed during the week ending October 22; and (2) to a statutory penalty for failure to pay severance pay (i.e., another week's wages) "immediately" on October 22.

Appellant's contentions, specifically stated, are: (1) By reason of defendant's delay until November 2, in paying the wages for the week ending on October 22, the defendant is entitled, as a statutory penalty, to wages for the period of time from October 22 to November 2. (2) Appellant was also entitled to severance pay on October 22 when he was discharged. (3) By reason of defendant's failure to pay severance pay (on October 22 or at any other time), appellant is entitled, as a statutory penalty, to wages for 30 days.

■ Appellant's first contention, to the effect that appellant was entitled to a statutory penalty for 10 days' wages for defendant's delay in paying wages for the week preceding

October 22, was not presented to the trial court. The only statutory penalty referred to at the trial related to a penalty for not paying wages allegedly earned after October 22 (not before that date). Any consideration of this contention by the court would not be a review of a proceeding which was had in the trial court. This contention is raised for the first time on appeal, and therefore it will not be considered.

Appellant's second contention, to the effect that he was entitled to severance pay, was not a pleaded issue; however, it appears that the parties presented evidence regarding severance pay. Apparently such evidence was presented by reason of a statement in the pretrial stipulation that defendant "contends" that it offered severance pay to appellant but he refused it. There was evidence on behalf of defendant that the offer of severance pay was made upon condition that appellant turn in a time card for the time he claimed he worked after October 22; appellant did not comply with the condition; and he said he did not need defendant's money. Also, there was evidence that appellant was dismissed for cause—the producer testified that he told appellant that he (witness) was dissatisfied with appellant as a film editor. There was conflicting evidence as to whether it was customary in the television film industry to give severance pay. Mr. Todd, a witness on behalf of appellant, testified that he was assistant manager of a film editors' union; the custom in the film editing industry, with reference to severance pay, is "After one week's continuous employment where a person is dismissed without cause, two-weeks' pay if not reemployed within the 90-day period." Mr. Feitshans, a witness on behalf of defendant, testified that in 1955 he was supervising film editor for defendant; that the practice in the industry relative to severance pay was that if a person worked in excess of a year he received severance pay, and if he worked less than a year he was not entitled to such pay. Mr. Lacey, a witness on behalf of defendant, testified that he was formerly the producer for defendant; he had been employed by defendant about six years; it was his custom to pay severance pay if the employee turned in a time card; he told appellant that if he would turn in a time card, he (witness) would pay severance pay; and appellant refused to turn in such a card. While he (Lacey) was a witness he was asked if he had received severance pay when he left the employ of defendant. He replied in the affirmative. Then he was asked if that was the custom and practice in the industry. He replied, "This is

the practice——.'' It appears that his answer was interrupted by counsel for appellant, who asked, ''Is it or is it not?'' He replied, ''Yes, sir.'' It is apparent that he intended to qualify his answer. Whether or not it was customary, under circumstances similar to those in the present case, to give severance pay was a question of fact for the trial court. The court was not required to conclude, as a matter of law, that defendant was under a legal obligation to pay severance pay. In finding that appellant had been paid in full, the court impliedly found that appellant was not entitled to severance pay. The evidence was sufficient to support the findings.

Appellant's third contention, to the effect that he was entitled to a statutory penalty for defendant's failure to give severance pay, was not presented to the trial court. This contention is raised for the first time on appeal, and this court is not required to consider it. In any event, in view of the implied finding that appellant was not entitled to severance pay, there was no basis, of course, for assessing a penalty for not giving severance pay.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied June 14, 1960.